Good morning. Would both sides approach, please? Please approach. Nobody's going to be arguing. Good morning, counsel. Good morning, Eric. Good morning. Mitchell Catton on behalf of Kathleen Lawlor. Okay. Eric Macy for North American Corporation. Good morning to both of you. And what we'd like to do, because there's a cross-appeal, is give each of you a couple of minutes for rebuttal so that we are not real strict on time. And if we're engaged in an interesting colloquy, we'll go beyond the 15 or 20 minutes we would ordinarily give you. And this is that type of a case, I think. So let's begin then. Thank you. Thank you both. May it please the Court. My name is Eric Macy. I'm an attorney with a law firm of Novak and my colleagues who are on the brief with me, Mr. Stephen, my partner, Mr. Steve Suzuki, and my colleague, Ms. Julie Johnston-Allen. I represent North American Corporation of Illinois, which for today's purposes I will refer to as North American for ease of accord. And first, I will speak as the appellant with respect to the judgment entered in favor of the plaintiff on count three of the plaintiff's third amended complaint. And in particular, we appealed from the Judge McCarthy's denial of our motion for directed verdict, as well as Judge McCarthy's denial of our post-trial motion after the jury rendered its verdict. The count three is a claim for intrusion upon seclusion, a variation of the right of privacy in the state of Illinois, and there's really not a lot of cases on that. I believe Bussey v. Motorola is this court's principal case, which delineates the elements of what a intrusion upon seclusion are. And the theory of the case that went to the jury, and was consistently presented by the plaintiff here, is that someone pretexted, in other words, through artifice or deceit, said they were the plaintiff in order to obtain the plaintiff's telephone records from telephone companies. That is the so-called offensive act, highly offensive act, that is a necessary element of intrusion upon seclusion. So the question becomes, how is our client, North American, liable at all for that? First of all, direct liability. No evidence was presented, and I don't believe even the plaintiffs make this argument direct or circumstantial, that any employee of North American was the person or persons who imitated or purported to imitate that he or she was Ms. Lawler in front of the telephone company. I've searched the records devoid of any such direct evidence or circumstantial evidence to demonstrate that. Would an attorney acting as an agent for the corporation create some form of liability direct or vicarious? Under certain circumstances, an attorney can act as an agent. I believe this court, in other words, sometimes an attorney can be an agent, sometimes they're an independent contractor, but for all purposes, to the extent that the attorney was an agent and if the attorney was the person who in fact did it, that may create vicarious liability under certain circumstances for the plaintiff, but I don't believe that's here. There's no evidence that Mr. Greenblatt, who was the partner at Sackdorf and Weaver, at any time communicated with the telephone companies or at any event, circumstantial or otherwise, that he engaged in pretexting or directed anyone to pretext for that matter. Counselor, there were special interrogatories to the jury on the question of agency? That's correct. Drafted by the defense? Both parties, correct. And not objected to, that went to the jury. My question to you is, given their answers to special interrogatories, why should we even be concerned about the question of agency? Sure, because there was absolutely, positively, no evidence whatsoever, even for the jury to make a determination, that there was any type of agency relationship whatsoever. But the answer to special interrogatory is in a manner that is consistent with the finding of an agency relationship between your client and the investigators who wound up digging up the dirt. Yes, but Justice Levin, our position is, is that we've got that hypothesis, that Her Honor should never even have let the agency question go to the jury in the first place. That was our motion for directed verdict, both after our case in chief, both after both sides closed, after Plaintiff's case in chief, after both sides closed, and then again, after the jury's verdict, that this thing never, ever should have gone to the jury in the first place, because they can't even put on a prima facie case, I believe, based on the evidence, and I can go through that if you'd like, of agency whatsoever, none whatsoever. Because the primary consideration of agency, as this court has repeatedly had, both this division and others, is control. The ability to control the manner in which the third party, in this case, this probe, okay, acted. And there is no evidence, circumstantial or otherwise, that this defendant, North American, took any steps or even knew the manner in which probe was conducting the interrogation. Could you argue that it's circumstantial that they had to have been given instructions as to what to do? They had to do it. How they did it themselves, each little tiny bit of it might not have been controlled, but someone gave someone instructions, is that not correct? No one gave instructions to probe to go out and illegally obtain the telephone records for pretext. No one admitted to it. But I have direct evidence that everybody said they didn't do it, and it is unimpeached, okay, and it's uncontradicted, okay, because remember, the plaintiffs never put anybody from this third party discover, who ostensibly got the information on, to say what they did or didn't do. Of course, but the way it's all set up is you've got a lawyer who's working with one of your officers to manage this investigation. He hires an investigator, and the investigator hires an investigator, and we don't even know where that company is, what city they're in, what the name of the people are, and we're expected, the jury's expected, to believe that you folks have no idea what they're going to do, and then lo and behold, you get a bunch of phone numbers, and you use it in your investigation. That's okay? Yes, absolutely. That is absolutely okay. That's okay. Because if we didn't control how those numbers were obtained, okay, we under no circumstances were responsible. So we could just see no evil. I'll give you a classic example. Plaintiff's lawyer was a large malpractice judgment, calls up the same person they've used before, good reputation, licensed professional, like this agent was. This agency, not this agency, but this private investigator, was a licensed private investigator. We weren't. We didn't know how to do this. We weren't authorized to do this. It would have been violation of Illinois law for us to engage in this conduct. And what happens, what happens in this case, so the plaintiff's lawyer gets a judgment, and what do they do? They call up an asset search firm. Okay? One they've used before. The asset search firm goes back, gives them information on the asset search. $10 million judgment you got. The asset search comes back, it's got information. You don't know how the asset search firm got that information, you don't know what they did or didn't do, and there was no indecision whatsoever to lead you to believe that that asset search... All your attorney does is say, here's her name, here's her address, here's her social security number, and here's her birthday. Get back to me. Yeah, absolutely. And they get back to him, and all they get is telephone information, and it's like you didn't even think that was going to be requested. Absolutely. There's no duty whatsoever in this case for our entity to have made any further investigation. The reductio ad absurdum argument is that every time you hire an investigator, every time you hire a search firm, every time you hire a... What did they hire him to do? Excuse me? What did they hire him to do? To engage in an investigation? No, absolutely. To engage in an investigation. They did surveillance, they just didn't obtain telephone records. They did a comprehensive investigation. So every time you hire a private detective agency, every time you hire a script tracer, every time you hire a search firm to do everything, you're supposed to double check their work. And that's the reductio ad absurdum argument. Now, I would agree that if there is a circumstance which I would say that if we knew that the private detective agency, that one who retains a licensed professional to do a task lacks any realistic ability to monitor the professional given the professional's superior expertise. For example, unless somehow we knew that we would put on specific notice that this particular professional was unreliable or was doing something untoward, we had no duty whatsoever to go beyond that. Let me stop you for a second. What if inferentially the only way that someone could have gotten something was through means that were not necessarily lawful? Well, I think Judge McCarthy expressly addressed that. Remember... Let me finish though. If that happened, are you saying that you would have no responsibility? If someone shows up, they have obviously personal private information, maybe income tax returns or something of that nature that should not have been disclosed. I mean, I remember there was a president in 1974 who got thrown out of office for not checking with the people who did things in his name that were illegal, and he left office as a result. So it does happen that it goes up the chain. If you can reasonably presume that it could not have been obtained without some unlawful means, don't you have an obligation to them to do something about it? Perhaps. Perhaps. But I would argue here is that there's no evidence whatsoever that said that you can't get these or that our clients knew you could get these by any other means. Let me give you an example. Even Judge McCarthy indicated that there were possible other means of getting this information other than pretexting. Someone could have known someone in a telephone company and gotten the information. Someone could have hacked into the telephone company's... That's illegal too. Well, I don't know that it is illegal, Your Honor, but with all due respect, the theory that's on this case is that we pretexted. But if it's okay for you to get the information, not ask where it comes from, use it in your investigation, even though you know it's your personal phone records, that's okay. Yeah, I have no problem with that whatsoever. Unless... I think the jury did. Well, that might be, but I don't think it should have ever gone to the jury in the first place because of the agency issue. That's what I'm... I'm not suggesting that pretexting, if proven, is lawful by any stretch of the imagination. I'm not suggesting that this company discover who they didn't bother to sue, who they could have gotten discovery from but didn't take, who they didn't bring to the trial whatsoever to see what they did or didn't do to get the records. Okay? That that company may not be liable for the intrusion upon seclusion, but what they want to do is they want to say what Discover did is what Probe is responsible for, and indeed all Probe did. And this is Exhibit number... Play us Exhibit 164. Probe literally checked off a menu and faxed it back to these people and said, this is what I want. Okay? This is what I want. Now, Probe had no agency relationship with Discover in the first place for Discover to send it up upon the train. Probe didn't control how... So you're saying Probe was an independent contractor? Correct. And Discover was their independent contractor? Absolutely. And that because of that and because they're in Judge McCarthy's opinion and in your opinion there are other ways that someone could get this phone information besides pretexting, going through garbage, knowing somebody at the phone company, just calling up and saying can I have this information and having some dope at the phone company? Give it to them. Violate policy. Whatever. That there are plausible other ways to get this information. That's correct. That the chain doesn't go back up to... Correct. And even if there were not plausible other ways, which address his honor's concern. Okay? Even if there were not. And even if Discover in fact did what they did and pretexted. And it were unlawful. That doesn't mean that Probe was liable for what Pretext did or that we're liable for Probe because we simply did not control the manner in which Dan did it. And it's okay to not ask. Absolutely. Absolutely. Look at the Buchholz decision. The Buchholz decision which I believe Judge Gallagher himself wrote. Okay? Here you have a doctor, an anesthesiologist and a nurse in a hospital performing an operation. Okay. We're in the hospital taxing Dr. Smith McNeil Hospital and Nurse Jones McNeil Hospital. And even that with insufficient circumstantial evidence to hold the hospital responsible for the tortious conduct of the anesthesiologist and the nurse. Well, as I remember, the party who was deposed, I think it was the son of the person, said oh no, we didn't go there because it was McNeil. We weren't going. We weren't... There was no knowledge on his part. He was not relying in any way on the fact that it was Ed McNeil. And no different. There's no way that anyone would think that was relying on the fact that Discover was doing work and they were doing it on our behalf. Or that Probe was doing work and it was uniquely on our behalf. Probe isn't exclusive to us. We don't pay their employees. We don't pay their benefits. We don't train their people. We don't know how to train their people. We don't know how to do what they did. It just doesn't matter. I mean, the key point is control. It always has been. And if you look at every indicia of the cases we've cited for what constitutes agency, not a single one of them falls in favor of finding agency. And we maintain that Judge McCarthy was wrong for that and his case never should have gone to the jury for that issue. And it's an issue as to whether we should or shouldn't have... That seems to be their fallback argument is, well, even if there weren't agency, you should have known better. You should have known better and you should have caught this. Well, first of all, that was never presented to the jury. There is no special instruction that went to the jury that, hey, weren't they on sufficient notice that they should have acted? So that was never presented to the jury at all. Never appeared in the case. And for that reason, I don't believe it should be an issue for this appeal whatsoever, procedurally. More importantly, I don't believe there is any evidence whatsoever that we knew or would have known to take some steps. They argue a ratification, but ratification assumes no agency. Ratification assumes that Probe was an independent contractor. But they only cite this case status, a 94 case, but in that case, it's a corporate usurpation. They said that the plaintiff accepted benefits from a corporate usurpation and therefore the plaintiff ratified it. But there, the plaintiff had full knowledge of what was happening and it was a corporate context, it wasn't really a tort, and it was a defense. In other words, ratification was treated as a defense. Ratification here, they're pleading as an affirmative claim. There's no case that we found where when you hire an independent contractor, they are liable for the defendant's intentional tort. And in particular, there's no case that we found where when you hire an independent contractor, you are liable for the independent contractor's tort without knowing the material facts giving rise to the tort before you accept the benefits of the tort. And in this case, there is clearly no evidence, none, that North American had full knowledge of all the material facts, including the way in which the acts were accomplished. And to address the question that was raised here, there was no duty to inquire. They didn't argue willful blindness, gross negligence. Again, never presented to the jury, not a special interrogatory. No case applies willful blindness or gross negligence to impose vicarious liability of an independent contractor's conduct on another. We saw it nowhere. All they cite is a federal copyright case from 2003, which is federal copyright law for vicarious infringing of a plaintiff's copyrights. It's copyright law, it's not binding, it's not applicable. And in any event, it only applied in that case because the defendant took affirmative steps to be sure he didn't get the knowledge. And there's no evidence whatsoever that North American took affirmative steps not to find out. That's different than being passive. And that just doesn't exist here. They cite this progress printing case versus Jane Byrne. This is when Jane Byrne and her committee didn't pay a bill for any printing. It's a big issue in that case. It's a contract case. It's not a tort case. It's not a tort case. And what happened was the person who was responsible for hiring the person kept getting the bills with the printing company's name on it and just ignoring them. Passed them on to somebody else and the court said, look, that's willful blindness. All you had to do was open up the invoices, you would have seen that you were getting bills from this printing company, and again it was contract liability. I don't think in any of those cases, and in fact, let me try to cite the restatement third evasion case, comment B of section 403. Then if you go to the case reporter, okay, if you go to the case reporter that supports the comment, the case that the case reporter cites is a case where a supervisor fails to inquire into facts after the employee tells the supervisor that the supervisor's application of pesticides caused the occupants of the space to become ill. No one told us anything about how Discover was getting the information. Indeed, Mr. DeLuigi, the owner of Probe, he himself testified. Uncontradicted and unimpeached. And under Swyrum, it must be accepted because of that. Uncontradicted and unimpeached. Even Mr. DeLuigi himself testified. He had no idea how Discover gets the information. He checks off the menu. It's a restaurant. He faxes it in. He gets the information back. He used them for many years. And at no time is there any evidence of any indication that what these people did was inappropriate. And in the absence of that, I don't see how North America can be liable. Unless you have questions on the liability issue, I'd like to turn to the punitive damages issue. If I could. Yeah, that's fine. Thank you. I'm worried about your time. Okay, thank you. I appreciate it. We want to hear from you. You've got the counterclaim, too. Yeah. Yeah, well, I was going to respond. I was going to let counsel argue as the appellant on the counterclaim as much as he wanted when I was responding. That's fine. Thank you. Thank you. Punitive damages. If you'd excuse me for a second. Sure. Thank you. No problem. I believe it's a de novo standard. You get to review this again. At least with respect to whether the facts of the particular case justify the imposition of punitive damages as a question of law. That's de novo review. That's what the Illinois Supreme Court said in Kelsey v. Motorola, a 79 case, and this district said it fairly recently in Blount v. Stroud, which I think is a very good case to look at here as to being applicable. First, I would mention that the elements of the cases I've articulated in the Bussey v. Motorola say, look, in order to have intrusion upon seclusion, one element must be that the person is a criminal person. So what was the highly offensive conduct here? The plaintiff's case that went to the jury in the special interrogatory is that the highly offensive, and always, this was always in theory, the highly offensive conduct was the pretexting, and pretexting is deceit. Pretexting is arguably fraud. Making a misrepresentation to the two telephone companies that you were someone else. So the deceit, the fraud, is already an element of the cause of action in order to obtain compensatory damages. Therefore, you need something more. The case law is clear that to get punitive damages under Illinois common law, you need something more than one of the elements of the underlying cause of action to get compensatory damages, and we submit that the record is silent that there's anything more than the pretexting. For that principle reason, we don't believe you can get punitive damages. Pretexting is fraud or deceit. So there's no such proof, we believe. No evidence of threats to Ms. Lawlor physically or otherwise, none whatsoever. No evidence that the defendant, just like in the Blount case, unlike Blount, there's no evidence where someone from North America says to Ms. Lawlor, I'm going to use my wealth, I'm going to use my powerful connections to prosecute you criminally and civilly to make you suffer like I have. That's what happened in Blount. That's what the individual defendant, owner of the radio station, told the plaintiff. And there's no evidence, okay, that we pursued any claim to make her suffer in having to defend a suit to get her to back down. Remember, time-wise, we sued our counterclaim for breach of fiduciary duty before the plaintiff amended to file her third amendment complaint to assert the tort of intrusion upon exclusion. Our counterclaim was never a response to her tort claim. Our counterclaim was already on file for breach of fiduciary duty before she ever filed a tort claim. No evil motive and no reckless disregard for safety or the health of anybody. So, for those reasons, we believe there's no common law of punitive damages under the law of the city of Illinois. In addition, and this is particular, it's the Kenner versus Checker taxi cases, which cites an Illinois Supreme Court case and then a whole litany of spring sites of cases that I urge you to look at. What they want to do is hold us, first they want to hold us vicariously liable for the tort of the independent contractor, and then they want to hold us vicariously liable for punitive damages. Remember, we didn't do the pretext under any scenario. So, what happens is they want to now say, we're liable for punitive damages because of some third party's conduct that you want to hold us liable for for the underlying tort. And what you require is deliberate corporate participation for that vicarious liability. Deliberate corporate participation in the tort itself. And that just doesn't exist here because the testimony in the record is undisputed, it is unimpeached, and it is not contradicted. That we did not know about or otherwise authorize the pretext. And we had no knowledge of what was going on. In the absence of that, I don't understand how we can be vicariously liable for punitive damages based on someone else's conduct. And let's look at the policy behind punitive damages. This court has repeatedly held, as the Illinois Supreme Court, the policy of punitive damages is deterrence. It's not to compensate the plaintiff, it's to deter someone else from doing wrong. It's to send a message, not just to the individual, but to society at large who becomes aware of this and won't engage in the conduct. Imposing punitive damages vicariously in North America doesn't deter, discover, from engaging in pretexting or other people engaging in pretexting. It might deter North Americans from doing this again. It might, I have to tell you, it would kill North Americans probably from ever engaging in an investigation of anybody whatsoever, notwithstanding lawful. Notwithstanding the fact that Judge Burke in summary judgment held that all the conduct we did was lawful in terms of surveillance, that providing a social security number is number, that providing her telephone numbers was lawful, all of that was lawful in the state of Illinois. Even providing her social security number is all lawful in the state of Illinois. So we're getting beat up because we lawfully provided information to a third party who goes and engages in conduct that we have no idea about. So it doesn't really deter us. I think it has a deleterious effect or a downside. What it does is it prevents lawful conduct by entities like us who believe they can investigate an employee and use a licensed private investigator and use a licensed attorney involved in the process, and then get beat up for what a third party did on vicarious liability, particularly on punitive damages, when the deterrence should be to the people who actually did the conduct, which would be discovered. Which conspicuously, neither discovered nor any of its officers or directors have ever been sued for whatever reason. And I can't explain why. It never got to us. It seems like, to use your phrase, that North American got beat up because it allowed somebody to hire an investigator on their behalf to get information and then to claim indifference, ignorance, a lack of interest at all in how they got the information. And then North American was quite willing to use that ill-gotten gain in their investigation. That seems to me from reading the record. Well, I wouldn't characterize it exactly the way you did, but once again, Your Honor, I would articulate that I find no duty in Illinois common law for a party to investigate the conduct of an independent contractor that it hires to determine whether or not that the conduct was or wasn't tortious when there is no notice whatsoever before the receipt of the benefits that the conduct that the so-called third party was engaging in was tortious, just like the skip tracer or the person who finds out. But it's not just tortious. It's illegal. Pretexting is illegal. Isn't that? No, pretexting isn't illegal. This isn't a criminal case. There's no statute that I'm aware of that was put into evidence and put before the jury that says pretexting was legal. The only case they find is the, I think it's a district, federal court district of Wyoming case called Act You Serve that talks about a federal statute which prohibits telephone companies, telephone companies, from providing the information only to certain people. Okay? Not the individuals. Okay? And that's a statute that imposes responsibilities on the telephone company. We're not bound by that statute whatsoever. And I don't even know that federal law applies. And that wasn't even presented to the jury in the first place. In other words, there was no instruction to the jury and no theory to the jury that what we did was illegal, quite illegal on its face. It just wasn't there. Okay? Now. Let me give you a couple more minutes. Okay? Sure. The point on cumulative damages, I have to do the due process side. Okay? Again, de novo. We know what the no excavating case says. And it's been discussed ad nauseam now. It comes up all the time. And I want to talk about the factors and go into them quickly. No severe physical injury. She got no medical care whatsoever from a therapist or a doctor whatsoever. Okay? She lives a normal life. She works full time. She enjoys her family. They traveled. They threw parties. They go out to eat. They have people over. No injury that materially impairs her work or life. No kind of physical injury was contemplated by the conduct of North American. And what I think is important for this court is I believe there is no proximate cause in the record between her ostensible injury, okay, and what she got. And the reason for that is if you remember, there was surveillance. And she sued us for surveillance of stealing in the mail box. And she sued us for surveillance. But Judge Burke found that public surveillance is lawful in the state of Illinois and they didn't appeal from that summary judgment. Okay? So therefore, she had no evidence of the proximate cause of whatever anxiety or mental anguish she felt was a function of the surveillance as opposed to this one time where she found out that someone was looking at her telephone records. Indeed, the passion of the surveillance was so great that she had her mother in the record checking off every single day who was or wasn't outside her house and what times they were there and what times they weren't there. So I think that's a problem. Second element of reprehensibility, reckless disregard for health or safety, none whatsoever. The conduct only impacted her. If anything, it's a private wrong. So no one's health or safety was ever threatened whatsoever. And was she financially viable? The answer is it's the plaintiff's burden under Levy v. Markle. She has to demonstrate that she was financially vulnerable. And there was no evidence to the contrary. She made more than $217,000 the year before she left the company. She was scheduled to make approximately $300,000. Look at Plaintiff's Exhibit 145. She's got a beautiful home in Orland Park. Her boss, she says, she testifies. All her other bosses that she used to work for were calling her the raccoon all the time. She gets the job at Shamrock within 30 or 60 days after leaving our company. She goes on vacation. She has parties at home. She goes out to eat. There's no proof that she knew she was financially viable. I think that there's just no evidence that this woman was financially vulnerable. Was it a repeated or isolated incident? No. It was simply not a pattern at all. In fact, the Leishon case, the very recent 1st District 2010 case that they cited in their last brief, that our conduct was a pattern, if anything, within one transaction. There's no evidence of instances of pretexting by North American in relation to persons other than Ms. Lawler. We're not recidivists here, which is what I think the Supreme Court is talking about, both the United States and Lowe, for purposes of whether it's a repeated or isolated incident. Indeed, they put in an offer of proof that we got the phone records, and it was not admitted, of one woman by the name of, I believe her name was Jennifer Hall. What they didn't put in, there's no evidence that those records by Ms. Hall were obtained by pretexting. They have no evidence of that whatsoever. They didn't call the phone companies like they did for Ms. Lawler to demonstrate how those records were obtained by Ms. Hall. They just didn't put in that circumstantial case. In the absence of that, I think there's no recidivist. And intentional malice, trickery, or deceit. There's no evidence we know, again, that there was pretexting, so I believe there's no evidence of trickery or deceit. And the disparity. The original jury verdict was 27 to 1. It was remitted to 10 to 1. But I maintain virtually no, if anything, physical harm. No intent to cause harm to her. If you compare it to other Illinois cases, which they actually do, I can't find another Illinois case of an intrusion upon seclusion. You're okay with the $550,000 that the judge gave you in punitive damages, but the $650,000 that plaintiff got, way out of bounds? I'll be as candid as I can be with this court. The answer to that is no. I'm not okay. And I'll address that. I would say, okay, and I've looked at the record, and I've gone back over this. I think the 7 to 1 disparity, in our case, for punitive damages is probably too high for due process muster. I'm being as candid as possible. It's a refreshing, wonderful thing to hear from a lawyer. As I look at the case, well. We all hope that he gets it. No, I just don't. I don't see it, in all fairness. I really, really don't. Anymore in our case. Anymore in our case. I simply do not see it. Why don't you go ahead and finish up? Sure. We want to hear from you. Right. No civil statutes for comparable conduct. I can't find it. And they do. They argue legal fees. She incurred legal fees. And I do want to address this, because I think this is important. She testifies that her legal fees weren't just for this case, but they also include another case where she has sued Probe. She has sued Probe and Mr. DeLuigi, and the court can take judicial notice of this, that it's case number OHCH05831 pending in the circuit court of Cook County. So the same lawyers work on the same case. So she can delineate her fees between this case. It's a Chainsery case. Well, they were consolidated. Okay. They were consolidated. And that case was tried first. Okay. You'll see that. But that's the number that it's on. Yeah, the CH is a Chainsery. Right. And then she didn't delineate between the fees for that case and this case, and she said all those fees were for both cases. But in addition, the legal fees that she incurred, she's incurred for her contract claim, which she lost, the procuring clause claim. She incurred them in defense of our counterclaim, which she lost. In fact, there are two counterclaims, one for contract and one for toy. So I can't, she's, it's inappropriate to come in here and say, I incurred all these legal fees, and you should look at that reputed damages person, but she doesn't delineate. You mentioned the Blount case, and in the Blount case, the court did take into account the amount of attorney's fees this woman had to incur in order to bring the action. Here, the testimony that I recall from trial was hundreds of thousands of dollars. I don't know if it's 500,000, something like that. Yeah. Two points. Did the court take that into account? No. The plaintiff, the plaintiff in this trial was awarded attorney's fees by the trial court, and the trial court added that attorney's fee award. It was a specific award of attorney's fees that was added to the compensatory damages award compared to the punitive damages award. It was less than two to one, and that's what the court said. The disparity was okay. Here, there is no award for the plaintiff's attorney's fees. No judgment for attorney's fees. That's point one. Second of all, the attorney's fees here is, she failed to delineate. She just gave you a gross number, and she didn't come in and said, of these attorney's fees, 20% went for my intrusion-punish-declusion case as opposed to my defense of Mr. Lacey's client's claims or the probe case that is ongoing. For all those reasons, we maintain no punitive damages. Thank you for your time, Your Honors. Unless you have any questions, I'll sit down. We'll hear from you again. Thank you. Good morning again, Counsel. Feel free. That's what it's there for. May it please the Court, Counsel, Kathy Lawler is here today along with Josh Diller who assisted us on the brief. And Nancy Tuple, my partner, who worked on the trial with us. My name is Mitchell Catton. I represent the plaintiff of Cullian Escapes, Kathleen Lawler. And we are asking the Court for three things. And I understand now I'm going to go in a little bit of preview of what's coming up, but we'd like this Court to affirm the judgment for intrusion-upon-seclusion and reinstate the jury's punitive damage award. We believe that this Court must reverse the judgment on fiduciary duty and vacate the damages awarded on those counts as those claims don't even rise to a cause of action that is recognized in LNI. And finally, we believe that this Court should reverse the trial court's entry of directed verdict on the procuring cause claim. I have three main points I'd like to make with respect to the intrusion claim in which we are the appellee I have one central point. And that was raised by Justice Lavin that the special interrogatories control this case. And they control the intrusion-upon-seclusion verdict. That these are fact questions that we're talking about. Credibility determinations. Inferences of evidence. And the jury answered detailed special interrogatories propounded by the defendant that they wanted answered and they've answered those that it wasn't just agency they found that North American directed the tort authorized the tort and knew that the records were obtained by pretexting. There is simply no basis for this Court to upset the jury's findings when there were questions of fact and inferences for them to drop in the evidence. The defendant would just like to talk about agency theory. But even to get to agency this Court has got to reverse the jury's findings regarding North American's direct involvement in ratification of probe-and-discover's conduct and there is simply no basis to do that. The interesting thing about this case is that North American would like this Court to find that a defendant can direct someone to commit a tort pay them to commit a tort give them all the information they need to commit the tort receive the benefits of the tort have the tort continue for five months commit the same tort to other employees and yet say because we don't know because we told people not to tell us how they did this we can't be held accountable for this and we are receiving hand-written records what phone company is going to release hand-written list of 700 phone calls made by someone with the time and duration why is the private investigator calling North American and saying I'm going to send these over to you if there is nothing illegal about the conduct the jury heard this evidence the jury heard the inferences and they heard about an unrepentant bully of a corporation that did what it wanted to do and didn't care about anybody else's rights didn't care about the privacy of other employees they successfully kept evidence that they provided the same information for Don Dorff but the private detective admitted he obtained the telephone records in the exact same manner as he obtained Cathy Lawrence records he obtained information from Pat Dolan the vice president of North America he took that information and provided the information to discover and keep that evidence out how does that not show knowledge how does that not show that it is a recidivist the jury heard the implausible testimony of North America and found that they did nothing wrong and no good deed goes unpunished they repeated that to the jury at least 10 times and the jury sat there trying to figure out what is the good way to get the records giving out information that you keep under locking key to a private detective who has no idea how to get the records despite the fact that he is 30 years in the   has no idea how the fiction they created to try to  Kathy jump through these hoops to establish their knowledge. Intrusion upon seclusion does not have an element of the tort. It is simply not an element of the tort. There is no reason why we had to prove it was pretexting but we did. The jury answered specific interrogatories showing that North America knew how the records were obtained and they authorized to get the documents in that way and they ratified their conduct. This was information that North America wanted. The vice president was the only person to try it. This is conduct that they asked for. These are records that they specifically requested and the major problem with the defendants case is they failed to observe the standard. They failed to take the evidence and there is no better showing than the defendants claim that there is no evidence that they have the records. Al Pacino clearly testified that the reason he ordered the phone records is because they were requested. You have a corporation asking for phone records and they are getting the phone records and they are using the phone records and it is the senior officials of North America that are trying to figure out who Kathleen Lawler is calling and they are writing notes on the records that she is calling her family member. They are the only ones that care. They are the only ones that examine the phone records. They are the  that care. It was factual questions and it was inferences that the jury had to make. We were lucky. We had an extremely bright jury. We had six people with advanced degrees. We had a pediatrician and an attorney. There was a college professor in English and they saw through the charade that the defendants put up there. If there is anything that pissed the jury off is that the senior officials of North America got on the stand and claimed nothing when they were the first American to get phone records. They requested a specific examination of numbers and they got that and at no time did they stop to say are we infringing on the rights? The telecommunications act of 1996 had been in effect for almost ten years before this. It prevents pretexting. The accuser's case is about pretexting and that's what they did. By anyone. It prevents the telecommunications company from giving out phone records to anyone. That would be the telecommunications company but it prevents them from giving it to anybody but the subscriber and that's why there was testimony from the phone companies that they only released that information to the subscriber. There was something called v-snap where they have to verify the social security number, the name, the address, the password of the person to make sure that they are only giving out the information to the actual subscriber. There is no legal way to get phone records where they are not given with the consent of the subscriber. The defendant makes a challenge about how do we know it was pretexting and it's pretty clear because you look at the actual documents that the phone company produced or introduced in the evidence and it says if you look at the entries and this is at 670 the common law record, one of our exhibits, the U.S. cellular representative notes, informed customer records, they are not giving out the records to anybody but the subscriber. They conduct this search to make sure they are giving it to the provider and then they give out the information over the phone and the timing shows that no sooner does North America get a warning they get the records, they Google the numbers, they do their search and they try to decide what's going on with it. I don't think there is any doubt there is evidence from the jury to find pretexting. It's almost preposterous to say the records were obtained by the jury. The only speculation is try to imagine other scenarios. North America has no response to how did they get the records. As far as knowledge, probably most of the judges have had experience with criminal cases. Knowledge is a critical element of a lot of criminal cases. The defendant does not get up on the stand and say I knew it was illegal. You can't get into a corporation said knowledge is critical. That is how we do it. North America would like to say by denying that I knew anything, I have a get out of jail free card. I did nothing wrong despite getting hundreds of phone records for five months and never stopping to ask how they were obtained. I can't be liable. I had my trusty private detective who has been in the business for 30 years. He wouldn't do anything illegal. He didn't know how to get phone records. He didn't know if phone records were private. Who were they entrusting the work to? They gave all the information necessary to get the phone records. This is a company that keeps the information under lock and key. They released it without asking what it would be used for. They provided the same information for Hall and Dorff. The senior officials monitored the investigation. They assigned Pat Dolan to be the liaison of probe. He had conversations with probe regarding the investigation. As I mentioned before, all the information was handwritten. They received warnings. Most importantly, what I think allowed the jury to find knowledge was credibility and determinations. In the opening statement, the probe made the decision to get the phone box. They also told the jury there would be no evidence that the defendant told probe to get  records. The jury testified it was not his idea to get phone records. In fact, he only ordered the phone records he was instructed to get. The attorney testified it wasn't his idea to get phone records. In fact, he didn't even know that North American got phone records. He never discussed the investigation with anybody. His only role was to have probe talk to North American despite the fact that North American had worked with probe for   time. He worked partly with other senior officials of North American on other investigations. The only reasonable inference is that the defendant created the charade to involve Greenblatt to create plausible deniability to shield their conduct because they knew it was wrongful. They got an affidavit from Greenblatt that he testified about a trial where he said it was used to prevent documents regarding the investigation from Greenblatt. Greenblatt didn't bill any time to this investigation. There is absolutely no time billed for this. But North American paid probe through Greenblatt to create the charade. I don't know if you understood what you said. You said Mr. Greenblatt said the probe and discovery were his agency? Yes. And you're saying from there you bootstrapped Mr. Greenblatt and the attorney for NAC. Is that what you're saying? Yes. I don't think we need to get there because I think we have direct involvement and agency. Even if you get there and I don't think you need to it's ironic they would file a motion to prevent discovery because the jury found they were agents. North American controlled every aspect of the investigation. North American told probe exactly what they wanted them to get. North American told probe to end the  and get the form records and try to determine who he was calling. What did probe do? He filled out a form and exercised no discretion. He didn't know how to get the form records. He did not have any discretion. They were controlled by North American through probe. There are cases dealing with a doctor's relationship with a patient and attorney. Here it was reasonable for the jury to find that there was agency. There is no reason to reverse it. There is evidence to consider and credibility determinations and inferences. Regarding punitive damages, this is a case that cries out for punitive damages. This is a defendant who got up at trial and says we did nothing wrong. Punitive damages are to deter and punish. If this is not the case then there is no case. This is a company that took the law into its own hands. Even assuming they gave those statements in June, they could have filed a lawsuit. They could have gotten the records through discovery. They could have served a subpoena but they didn't want to do it because they wanted to do it themselves. They didn't want to be controlled. They didn't want to be monitored. The company believes it is above the law and it doesn't apply to them. And they directed this. This is not vicarious liability. This is their direction. They engaged in a cover-up to prevent information from getting out. They involved their attorney to prevent the information from being discovered. They asserted the client privilege based on the agents because at that time it was expedient to do so. They never said why did you go out and do that? There is no claim for identification. There is no claim for contribution. As far as whether the conduct is repeated, there were 14 calls just to U.S. for five months. The calls to the phone company started June 24th of 2005. Calls continued to October of 2005. I think the offer approved. If anything doesn't show this is a recidivism of information. The fact is that North American obtained the phone records for Jennifer Hall in the exact same manner. Information from North America sent forward to discover. They provided the exact same information for Don Dorf. He acknowledged he got the information but couldn't testify why he got it. What else is he going to do? Social security number, birthday, telephone numbers. What else is there to do with it? Additionally there is not an attempt to use it against Waller. They told Bristol that they warned him that we will use those and you better be on our side on this. I think it is important that you can't use  against Waller. It is so expensive to vindicate their  There is no mathematical line that can't be above. We set it to the case in which the 7th Supreme Court found that we have to take one's attorney's fees into account. We can't make it economically unreasonable  plaintiff to vindicate their rights. We can't make it so economically unreasonable that a plaintiff can't get an attorney to take a case. Here, I think we would all agree that the right to privacy is fundamental. One's right to privacy is intangible. There is no specific dollar amount. We acknowledge that everybody in this room would put a different dollar amount on the case. It is extremely difficult. But to say that you are limited to those damages or some small multiple would mean that nobody would ever bring suit. Nobody would stop North America from pretexting. Nobody would get them to sit up and take notice. The damage is supposed to be large enough to be heard. In this case, it is a $50 million company self-reported with no debt. That is what the jury heard. The jury heard this crazy head in the sand defense and they thought it was absurd. We got involved right before the motions were briefed and heard. A party should not have to be insolvent to vindicate their rights. A party should not take a net loss to defend their rights. A   not be insolent to protect such an essential right as a right to privacy. A party should be made whole at the end of the litigation. When you look at what the attorneys fees are for, if you look at the record, almost everything in the case dealt with. Depositions had to be retaken because the defendants refused to answer questions. The way this case was tried, it was filed as a procuring clause claim but it was tried as a pretexting claim. The substantial effort, the substantial fees resulted in  claim. There was another case pending but the reason the cases were not tried together was because the defendants objected. They didn't want the   repeated. That's the way the defendants tried the case. If you look at the record for volume 30, the defendant wanted to proceed to collect on their judgment while the appeal was pending.    objected to the appeal, the court would not stand up to them. For them to hear the message, the damages have to be substantial. If they're not substantial, there's no deterrence. For those reasons, I would urge this court to affirm the intrusion upon seclusion verdict. Thank you. Do you want to address the cross appeal at all? Absolutely. I have a question. Counsel, you spent a great deal of energetic time talking about the intrusion and seclusion claim. You haven't really addressed what I thought was the basic appeal of North American which is that the court erred in denying the motion to dismiss and that the agency should never have gotten to the jury. The pretexting should never have been posed to them. My understanding of the argument is that the court erred by denying the motion for judgment outstanding the verdict. My argument is simply that there were factual determinations that went into that question. There was credibility determinations. There was evidence from which the jury could find and reasonably find that North American was directly involved in the pretexting and they ratified the pretexting and because there was evidence out there it's a jury question. If you have conflicting evidence the judge normally won't take that away from the jury. I apologize if I didn't address that correctly. Regarding the cross-appeal. I was asked a procedural question. Will we get a chance to rebut on our appeal? I believe you said that Dolan asked for the phone records and could you point me even generally to what volume? He was in volume 27 and it was testified that all the records were requested by him in volume 27. It's in volume 27. I can find it. I have it here. Record 179 and the transcript page is 537. I have it here. The question was why are we ordering these telephone records? We were requested to. Two major points on the case. The first point I would like to make is you can't have a breach of fiduciary duty. It can't stand. It is completely divorced from Illinois law. There is no confidentiality agreement. It is information in her head that she created. She brought in the clients and she set up all the pricing information. It is not information she got from North America. There is absolutely no evidence that North America took any steps to keep the information confidential. I think it is important to realize the information was used not to compete but to interview. It was used to interview before she knew of this business. It would radically alter Illinois law. There is a case in Cincinnati that in the absence of a confidentiality agreement, there is no claim for disclosure of confidential information unless it is a trade secret claim. We don't have that here. The second point is that this judgment based on competition is based only on hearsay. It is based on an accurate testimony. There was no evidence corroborating that testimony. There weren't any. He gave the affidavit under duress. He said it was under duress. His story was that he received the call on one morning in October. He had just learned that his aunt was dying in London. He was flying back to London that day and he got the call when North America insisted that he stopped at the Oasis to sign the affidavit on his way to the hospital.  is no evidence that the court relied on the affidavit not for impeachment but as substantive evidence. There is no way to say it is harmless because there is nothing else providing the information that is in there. There is no evidence of anybody testifying that Waller tried to get this math question to count. With respect to the confidentiality claim, we have raised an argument that it was not even implied. It was introduced for the first time in the written post-trial motions that were filed simultaneously. While there were questions about this letter at the trial, North America contended that the letter was arguably relevant to its claim that there is going to be a completely different cause of action when this case is heard. Had we known, we would have taken discovery to show that the information cannot be used to compete. It is basically immaterial. It is just a summary of her claim.   a summary of her claim. In any of it, even if it is a proper claim, it is fundamental to the court's ruling. The court stated in the record that she will have to discourage the more serious offenses that were alleged. There is no case allowing for judgment to be entered on these facts. There is nothing out there. How does an employee guide their conduct? There is no confidentiality agreement. It is information she created and information that is in her own head. She is doing it to interview. It is pretty clear that we have a preliminary steps doctrine. An employee can't breach their duty of loyalty by competing before leaving their employment. They can do everything necessary to start competition prior to leaving. They can pick a business name, get an address, get insurance, hire an employee. They can't start competing. In this case, there is no evidence it was used to compete. The court's theory makes absolutely no sense because the only account that North America claims was MapQuest. She learned of that opportunity on December 20th and the letter was written on December 15th. The other problem for North America is there is no evidence to keep the information confidential. We have cited a few cases that in the absence of a confidentiality agreement or some instruction directive policy that the information is confidential, it is almost dispositive that it is not. There is no evidence of what the defendant did to keep it confidential. There is no evidence that they told their customers they couldn't give this out. I think what is telling is it is a letter written to her a month after she leaves her employment and they are so concerned she may be taking their business. They sent 46 pages of detailed information to her. I don't know what that is. Why would they send that? 46 pages. They didn't ask for it back. When you look at those 46 pages versus a summary there is absolutely no comparison. They didn't identify the particular products. They sell products, warehouse products and distribute products. The gross profits could have come from any part of that. We are talking about thousands of products. It doesn't say what any product costs. It doesn't say the profit margin for any product. It   profit margin for any product. Lawler got the business that she received by cold calls. She called people up and said can I beat your pricing? You didn't even need this. She got her clients without using anything. The business is not rocket science. There are no formulas. There are no patents. There are no inventions. They are selling shirts and golf balls. The problem with everything the court did after that is that it affected the judgment. I don't know how the judgment can stand when it is based in part on conduct that is not even actionable or wrongful. The court entered punitive damages based on that. The court explicitly said it was imposing a global resolution on the parties because the court disagreed with what the jury did. Absolutely. Good luck with the rest of your investigation. Absolutely. You know what? She double counted. She said I'm going to lower the punitive damage award given to Lawler because the jury didn't consider her conduct even though that was the central element of Mr. Macy's closing. He said how could we not have to protect our business. On the other hand, she used it to raise the punitive damages against Lawler by saying because this conduct is so bad there has to be $551,000 of damages imposed against you. It not only lowers the award to Lawler, it puts up the punitive damages. You can't punish somebody where you don't even take the time to tell them what they are doing is wrong. With respect to the solicitation of the business, it is clear the court relied on the evidence. In the court's written opinion, the court put in the allegations in the affidavit. That is what she relies on. You can't rely on the affidavit. The comments she points to are a single question. One question, Mr. Perez, was the discussion with Mr. Bristow consistent with the affidavit? He says yes. That is what she is relying on. Who said what in the discussion? Was it something Perez said? Was it something Bristow said? What does it mean? Especially when there is not a single witness that came in and tried to get me to take her business with her. There is no document. There is no e-mail. They had this massive investigation. What did they come up with? Nothing. There is no e-mail that Lawler even told the customers that she was leaving North America. Interestingly, Bristow was upset because Lawler didn't tell him she had left. What prompted his meeting at North American was the fact that she is no longer there and nobody tells him. He is a consultant and he is upset that he is learning from his client. There was one person . I will just say that there is just no evidence of it. There is no evidence to support it. The only person who testified from Shamrock was Chris. He never heard of Bristow. Nobody knew anything about this. The judge is trying to impose a global resolution because she doesn't like the outcome. There is no other way to explain what happened. There is no other way to explain how you can earn money when she brought in profitable business. If she didn't bring in business she received no compensation. The only reason she had money to forfeit was because she brought in $260,000 of profitable business and she got 30% of that. That doesn't include the math quest account. Two days before she left she brought in a $338,000 order. If she is preaching her fiduciary duty how does she bring in well over $360,000 of profitable business for North America in six days. If she didn't bring     she       to forfeit was because she brought in $260,000 of profitable business and she got 30% of that money from her fiduciary duty. If she didn't bring in well over $360,000 of  business for North America business for North America  days. she didn't bring in  $360,000 of business for  North  in six days. If for North America  days. If she didn't well over $360,000 of  for North $360,000 of  for North America    business for North   days. If she didn't